IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| TIMOTHY COX, § | |
|    Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. H-10-1626 |
| § | |
| WASTE MANAGEMENT OF § | |
| TEXAS, INC., *et al.*, § | |
|    Defendants. § | |

## MEMORANDUM AND ORDER

This case is before the Court on the Motion to Reopen Discovery Relating to Ted Tate and Motion to Extend Deadlines ("Motion to Reopen") [Doc. # 45] filed by Defendants Waste Management of Texas, Inc. and USA Waste of Texas Landfills, Inc. (collectively, "Waste Management"), to which Plaintiff Timothy Cox filed a Response [Doc. # 48].[1]  Also pending is Plaintiff's Motion to Quash and for Protection [Doc. # 49].  Having reviewed the full record and applied governing legal authorities, the Court exercises its discretion to reopen discovery and extend the remaining deadlines.  As a result, the Court **grants** the Motion to Reopen and **denies** the Motion to Quash.

---

[1] In the interests of a prompt ruling, thereby avoiding any unnecessary delay, the Court issues its ruling on these motions without awaiting the Reply from Defendants due September 2, 2011.

## I.     BACKGROUND

Plaintiff worked for Waste Management as a Director of Landfill Operations. In January 2009, Waste Management announced a major restructuring. On January 11, 2009, Cox suffered a heart attack and spent three days in the hospital. On January 14, 2009, Cox returned to work. On January 22, 2009, Cox was notified that he was included in a layoff caused by the restructuring and, as a result, his employment with Waste Management was terminated.

Plaintiff filed this lawsuit alleging that Defendants' decision to include him in the layoff was motivated by disability discrimination in violation of the Americans With Disabilities Act ("ADA") and the Texas Commission on Human Rights Act ("TCHRA"). The Court issued a Docket Control Order [Doc. # 17] requiring that discovery be completed by June 1, 2011.

On June 29, 2011, Defendants filed a Motion for Summary Judgment [Doc. # 31] asserting, *inter alia*, that the relevant decision-maker had no knowledge of Plaintiff's heart attack at the time the decision was made to include Cox in the layoff. Plaintiff filed a Response [Doc. # 31], to which he attached a Declaration of Ted Tate ("Tate Declaration") [Doc. # 37, Exh. 5]. In his declaration, Tate asserts that on January 15, 2009, he called Don Smith, the Area Vice President of South Texas for Waste Management. *See* Tate Declaration, ¶ 5. Smith is the Waste Management

employee who made the decision to include Plaintiff in the layoff. Tate asserts that, during the January 15 telephone conversation, he asked Smith "if he was aware Tim Cox had a heart attack the previous weekend" and Smith responded that he had heard about it. *See id.*

Defendants ask the Court to reopen discovery for the limited purpose of testing the truthfulness of the Tate Declaration. Specifically, Defendants want to conduct written discovery, particularly to obtain Tate's telephone records for the relevant time period, and to depose Tate.[2] Plaintiff opposes allowing Defendants to conduct any discovery regarding the Tate Declaration, arguing that it will only demonstrate whether the declaration is false and the Court may not weigh credibility when ruling on summary judgment motions. Plaintiff seeks to quash notices of deposition on written questions served by Defendants on the custodian of records of AT&T as served after the discovery deadline.

## II. ANALYSIS

"Rule 16(b) provides that once a scheduling order has been entered, it 'may be modified only for good cause and with the judge's consent.'" *Marathon Financial*

---

[2] Defendants also want to obtain all written communications between Tate and Cox and/or Cox's attorney. Plaintiff objects to that request, asserting that the communications are counsel's protected work product. By September 9, 2011, Plaintiff shall either produce the communications to defense counsel or shall submit the communications to the Court for *in camera* review.

*Ins., Inc. v Ford Motor Co.*, 591 F.3d 458, 470 (5th Cir. 2009) (quoting FED. R. CIV. P. 16(b)). Rule 16(b) requires a party "to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *Id.* (quoting *S&W Enters., LLC v. Southtrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003)). To determine whether the moving party has established good cause, the Court considers the following four factors: (1) the explanation for the failure to complete discovery prior to the deadline; (2) the importance of the requested discovery; (3) the potential prejudice if discovery is reopened; and (4) the availability of a continuance to cure such prejudice. *See id.; see also Reliance Ins. Co. v. Louisiana Land and Exploration Co.*, 110 F.3d 253, 257 (5th Cir. 1997); *Nunez v. U. S. Postal Serv.*, 298 F. App'x 316, 319 (5th Cir. Oct. 8, 2009).

### A. <u>Explanation for Need to Reopen Discovery</u>

Defendants provide a clear, rational explanation for their need to reopen discovery. From the date of Cox's layoff on January 22, 2009, until he filed his Response to Defendants' Motion for Summary Judgment on July 27, 2011, Cox has claimed that Smith "must have known" about his heart attack because Smith's co-workers at the Gessner Office of Waste Management "must have" told Smith about the heart attack. Tate did not work at the Gessner Office. Neither Cox nor his attorney ever disclosed Tate as a witness during discussions with Defendants or with

their lawyers. Neither Cox nor his attorney ever mentioned Tate during the EEOC process. Indeed, throughout the EEOC process, it remained Cox's position that Smith "must have known" about his heart attack.

Cox filed this lawsuit on May 6, 2010. In the Complaint, Cox did not allege that Smith knew about his heart attack and, more importantly, did not allege that Tate claimed to have discussed Cox's heart attack with Smith on January 15, 2009. Cox did not identify Tate in his initial disclosures or in his first supplemental disclosures. Cox did not disclose Tate during any written discovery. Cox did not mention Tate in response to any question during his deposition. Indeed, Cox did not list Tate as a person who inquired about his health during the week of January 13, 2009, although Tate states under oath in his declaration that he spoke to Cox on January 16, 2009, about how he was doing after the heart attack.[3] Cox's attorney did not mention Tate during any depositions he took of other witnesses. Indeed, Cox did not mention Tate at all until he served his Second Supplemental Initial Disclosures [Doc. # 24] on May 13, 2011. At that time, Cox identified six additional individuals who may have knowledge of relevant facts. Tate was identified simply as someone "who may have knowledge of facts pertaining to Plaintiff's work performance while employed by

---

[3] A review of Cox's cell phone records reveals no telephone call from Tate's office or cell phone on January 16, 2009.

Defendants and Defendants' knowledge of Plaintiff's health issues, among other things." Nothing in the disclosure indicates that Tate claimed to have discussed Cox's heart attack with Smith on January 15, 2009.

Between the May 13 Second Supplemental Disclosures and the June 1, 2011, close of discovery, Cox took depositions of four witnesses. With Defendants' agreement, Plaintiff deposed Smith on June 3, 2011. During the deposition, Cox's attorney did not ask Smith any questions regarding the alleged telephone conversation with Tate on January 15, 2009. It was not until July 27, 2011, that Cox first disclosed, by attaching the Tate Declaration to his Response to Defendants' Motion for Summary Judgment, that Tate claimed to have discussed Cox's heart attack with Smith on January 15, 2009.[4]

The timing of the Tate Declaration is not the only basis for Defendants to question the veracity of Tate's declaration. In March 2009, Smith fired Tate from his employment at Waste Management for using a vendor Tate had been told not to use because there were allegations that Tate was accepting cash bribes and kickbacks from the vendor. Smith withheld a $30,000.00 bonus from Tate. Tate hired an attorney,

---

[4] In his declaration, Tate states also that he discussed Cox's heart attack with other Waste Management employees, and that he telephoned Cox on January 16, 2009, to inquire how he was doing after the heart attack. Tate states that he knows Cox well and that Cox is "well-known and respected" and that Tate thought Cox was an excellent manager.

who unsuccessfully pursued payment of the bonus through the Texas Workforce Commission. Shortly after Tate was terminated by Waste Management, Cox hired Tate to work for him. Tate in his current job reports to Cox.

Defendants have explained fully the reason they did not know before the close of discovery that Tate claimed that he had a telephone conversation about Cox's heart attack with Smith on January 15, 2009. The Second Supplemental Disclosure on May 13, 2011, was cryptic at best and did not give Defendants notice of Tate's claim regarding his conversation with Smith. In any event, during the brief period of time between the May 13 Supplemental Disclosure and the June 1 discovery deadline, the parties and their counsel were already involved in taking four depositions noticed by Cox and Defendants' counsel was preparing for Smith's deposition held on June 3, 2011.

### B. Importance of Requested Discovery

It is extremely important for Defendants to test the truthfulness of the Tate Declaration. Smith has testified in deposition that he did not know about Cox's heart attack. Other Waste Management employees who worked with Smith have testified in deposition that they did not tell Smith about Cox's heart attack. Tate in his declaration provides the first and only evidence that Smith knew about Cox's heart

attack before deciding to include him in the layoff. Clearly, Defendants are entitled to test thoroughly that evidence.

Plaintiff argues that discovery regarding the Tate Declaration is not important because it will only demonstrate whether the declaration is false and credibility issues may not be decided at the summary judgment stage.[5] Defendants, however, have asked that the Tate Declaration be stricken as demonstrably false and not considered in the summary judgment analysis. Moreover, the evidence developed through the requested discovery could be used for impeachment should Tate testify at trial.

### C. Potential Prejudice

Plaintiff argues that he would be prejudiced if discovery is reopened because final resolution of this lawsuit will be delayed and the expense of the litigation will be increased. Defendants have already begun the process to obtain telephone records, decreasing the time needed for the Tate-related discovery. The Court will further reduce the impact of reopening discovery by granting only an additional sixty (60) days for Tate-related discovery rather than the requested ninety (90) days, and by reducing the time during which responses to written discovery must be provided.

---

[5] Plaintiff requests in the alternative that he be permitted to conduct discovery. Plaintiff may engage in any discovery in connection with supporting the assertions in the Tate Declaration, provided the discovery is completed by the November 30, 2011, deadline.

Additionally, any delay and increased expense could easily have been avoided had Plaintiff disclosed Tate and his proffered testimony in a timely manner. To the extent Plaintiff claims he did not know about Tate's allegation regarding a telephone conversation with Smith, the delay and expense could have been avoided if Plaintiff had talked to Tate about this case at any time between the layoff in January 2009 and the filing of this lawsuit in May 2010, particularly since Tate has been an employee of Cox since at least April 2009.

Moreover, the Court finds that the prejudice to Cox is significantly outweighed by the prejudice to Defendants should the Court decline to allow them to conduct limited discovery to test the Tate Declaration.

### D. Availability of a Continuance to Cure Prejudice

A continuance would not cure the prejudice to Plaintiff. Indeed, the continuance is the cause of Plaintiff's prejudice. The Court notes, however, that Plaintiff could avoid any increased delay and expense by voluntarily withdrawing the Tate Declaration.

### III. CONCLUSION AND ORDER

Based on the foregoing, the Court concludes that Defendants have shown good cause under Federal Rule of Civil Procedure 16(b) to reopen discovery and to modify the current docket control order. Accordingly, it is hereby

**ORDERED** that Defendants' Motion to Reopen [Doc. # 45] is **GRANTED** and Plaintiff's Motion to Quash [Doc. # 49] is **DENIED.** It is further

**ORDERED** that by **September 9, 2011**, Plaintiff shall either produce to defense counsel all written communications between Plaintiff and Tate and between Plaintiff's counsel and Tate or shall submit those communications to the Court for *in camera* review. It is further

**ORDERED** that the period for discovery in this case is reopened for the limited purpose of allowing the parties to conduct written discovery relating to the Tate Declaration and to depose Tate. This limited discovery must be completed by **November 30, 2011**. Written discovery must be responded to within twenty-one (21) days after service. It is further

**ORDERED** that Tate and all counsel shall appear in person before the Court on **December 12, 2011, at 1:30 p.m.** for a hearing on whether the Tate Declaration should be stricken from the record. It is further

**ORDERED** that, if the Tate Declaration is neither stricken by the Court nor voluntarily withdrawn by Plaintiff, the following schedule applies for supplemental briefing (only as to Tate-related issues) on the pending Motions for Summary Judgment:

Defendants' Supplemental Brief            January 9, 2012

| | |
|---|---|
| Plaintiff's Supplemental Response | January 23, 2012 |
| Defendants' Supplemental Reply | January 30, 2012 |

<u>No extensions of this briefing deadline will be granted</u>.  It is further

**ORDERED** that the current docket control order is amended as follows:

| | |
|---|---|
| Mediation (required) | February 15, 2012 |
| Joint Pretrial Order | May 7, 2012 |
| Docket Call (4:00 p.m.) | May 14, 2012 |

SIGNED at Houston, Texas, this **31st** day of **August, 2011**.

_____
Nancy F. Atlas
United States District Judge