IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TIMOTHY COX, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-10-1626 |
| | § | |
| WASTE MANAGEMENT OF | § | |
| TEXAS, INC., *et al.*, | § | |
|     Defendants. | § | |

**<u>MEMORANDUM AND ORDER</u>**

This disability discrimination case is before the Court on Defendants Waste Management of Texas, Inc. ("WM") and USA Waste of Texas Landfills, Inc.'s Motion for Summary Judgment [Doc. # 31], Plaintiff Timothy Cox's Motion for Partial Summary Judgment [Doc. # 32], Defendants' Motion for Sanctions [Doc. # 56], and Plaintiff's Motion for Sanctions [Doc. # 98]. All of the pending motions have been fully briefed.[1] The Court has carefully reviewed the full record and applied

---

1         Plaintiff filed a Response [Doc. # 37] to Defendants' Motion for Summary Judgment, and Defendants filed a Reply [Doc. # 43].

Defendants filed a Response [Doc. # 36] to Plaintiff's Motion for Partial Summary Judgment, and Plaintiff filed a Reply [Doc. # 42].

Defendants filed a Supplemental Affidavit [Doc. # 61] in connection with their Motion for Sanctions. After additional discovery was completed, Defendants filed
(continued...)

relevant legal authorities. For the reasons discussed more fully herein, the Court **grants** Defendants' Motion for Summary Judgment and **denies** all other pending motions.

**I.     BACKGROUND**

On January 9, 2009, WM announced a national reorganization that would require the elimination of certain positions and the termination of a substantial number of employees. As part of the reorganization, the Central Texas Market Area and the Houston Market Area were merged into a single market, ultimately with a single Director of Disposal Operations ("DDO"). At that time, Plaintiff was Director of Landfill Operations for the Houston Market Area and Steve Jacobs was the Director of Landfill Operations for the Central Texas Market Area. Don Smith became Area Vice President for the new area and became Plaintiff's supervisor. Prior to the reorganization, Smith had been Jacobs's supervisor in the Central Texas Market Area since 2004. Prior to the reorganization, Mike Lavengco had been Cox's supervisor in the Houston Market Area.

---

[1]     (...continued)
a Supplemental Brief [Doc. # 93], Plaintiff filed a Response and Supplemental Brief [Doc. # 95], Plaintiff filed an additional Response [Doc. # 97], Defendants filed an additional brief [Doc. # 101], and Plaintiff filed a Supplement [Doc. # 103] and a Reply [Doc. # 105].

Plaintiff filed a Supplement [Doc. # 104] to his Motion for Sanctions, Defendants filed a Response [Doc. # 106], and Plaintiff filed a Reply [Doc. # 108].

On Sunday, January 11, 2009, Plaintiff suffered a heart attack and was hospitalized for three days. At the hospital, Plaintiff was diagnosed with a non-Q wave myocardial infarction, coronary artery disease, hypertension, and dyslipidemia. It is undisputed that Cox did not inform Smith of his heart attack.

Smith testified under oath that by Monday, January 12, 2009, he had decided to retain Jacobs as the Director of Disposal Operations for the merged market and to include Plaintiff in the reduction in force. At 8:20 p.m. on January 12, 2009, Smith sent an email to WM senior managers John Workman and Jim Dowland. John Workman was WM's Southern Group Director of Disposal Operations, and Jim Dowland was the Vice President of Disposal Operations. In the January 12, 2009 email, with "So TX DDO" as the subject, Smith advised Workman and Dowland that he had thought about the subject situation "a good bit" and believed one option was the best. On Wednesday, January 14, 2009, Plaintiff returned to work. On Friday, January 16, 2009, Smith obtained approval for his selection of Jacobs for the Director of Disposal Operations position for the combined area. On January 22, 2009, Smith notified Cox that his employment with WM was terminated.

Plaintiff filed this lawsuit alleging that his employment was terminated because of his heart attack and resulting disability. Plaintiff alleges that he was subjected to discrimination on the basis of a "disability" in violation of state and federal

employment laws. After a full opportunity to complete discovery, Plaintiff moved for summary judgment that he had a "disability" at the time WM terminated his employment.

Defendants moved for summary judgment on Plaintiff's claims.[2] WM argued that Plaintiff had failed to present evidence to raise a genuine issue of material fact on the issue of Smith's knowledge of Plaintiff's heart attack at the time he made the decision to terminate Plaintiff's employment, and on the issue of whether Plaintiff was clearly better qualified than Jacobs for the newly-merged position. Plaintiff in his Response to Defendants' Motion for Summary Judgment submitted the Declaration of Ted Tate. *See* Tate Declaration [Doc. # 37-6]. In the Response, supported by the Tate Declaration, Plaintiff for the first time since his termination asserted that Smith told Tate on "the morning of Thursday, January 15, 2009" that he knew about Cox's heart attack. Prior to that time, Plaintiff's argument had been that Smith had to have known about the heart attack because "everybody knew."

Defendant obtained cell phone and other telephone records that contained no phone call from Smith to Tate on January 15, 2009. As a result, Defendant filed a Motion for Sanctions asking the Court to strike the Tate Declaration and for other

---

[2] Plaintiff does not oppose dismissal of Defendant USA Waste of Texas Landfills, Inc. *See* Response [Doc. # 37], p. 6 n.28. As a result, Plaintiff's claims against this Defendant are dismissed with prejudice and WM is the sole remaining Defendant.

sanctions against Plaintiff and his counsel. The Court reopened discovery for Defendant to depose Tate, and for the parties to obtain additional phone records and explanations of those records. The parties now agree that the cell phone records demonstrate conclusively that there were no cell phone call from Smith to Tate on January 15, 2009. The parties agree also that any telephone calls from Smith's landline to Tate's landline would not be reflected on any of the records.

After the telephone records failed to demonstrate conclusively that there was no call from Smith to Tate on January 15, 2009, Plaintiff moved for sanctions against Defendant's attorney. Plaintiff notes in his Reply in support of his Motion for Sanctions that Defendant's counsel has filed other motions for sanctions in other cases. All pending motions are ripe for decision.

## II.    MOTIONS FOR SANCTIONS

### A.    Motions for Sanctions Against Opposing Counsel

Defendant seeks sanctions against Plaintiff and Plaintiff's counsel pursuant to 28 U.S.C. § 1927 and Rule 56(h) of the Federal Rules of Civil Procedure. Plaintiff seeks sanctions against Defendant's counsel pursuant to § 1927 and Rule 11 of the Federal Rules of Civil Procedure. This case has been hotly contested, and at times both counsel's strategic decisions may have been ill-advised. Nonetheless, the Court declines to impose sanctions against either attorney. As a result, Plaintiff's Motion

5

for Sanctions [Doc. # 98] and Defendants' Motion for Sanctions [Doc. # 56] against Plaintiff and his attorney are **denied**.

### B.    Motion for Sanction - Striking Tate Declaration

Defendant's motion to strike Tate's declaration is based on the assertion that the declaration is demonstrably false. In support of that position, Defendant relies primarily on phone records that reflect no phone calls on January 15, 2009, from Smith to Tate. The parties now agree, however, that any call from Smith's landline to Tate's landline would not be reflected in the records. This is true because WM was enrolled in flat-rate billing and only "measured service" calls were reflected on the phone records. The records show that Smith was using his cell phone on the morning of January 15, 2009, and appear to indicate that Tate was in his office with access to his landline for only one hour and fifteen minutes on that date. The times reflected in the cellphone records do not eliminate, from a timing standpoint, the possibility that Smith called Tate that morning. As a result, the phone records do not establish conclusively that Tate's statement that Smith called him on January 15, 2009, was false. Absent such conclusive evidence, the Court declines to strike the declaration and Defendants' Motion for Sanctions is **denied**.

WM argues also that the declaration has other inconsistencies. For example, Tate stated in the declaration that he reported to Smith. During his deposition,

however, Tate admitted that he never reported to Smith. Tate's Declaration included statements regarding his knowledge of Plaintiff's good reputation, but his deposition testimony indicated that he had little personal knowledge and was simply repeating what he "had heard" from others. These discrepancies do not persuade the Court to strike Tate's declaration.

WM argues also that Tate has ample motivation to sign a false declaration to support Plaintiff's opposition to summary judgment. In March 2009, WM, through Smith, terminated Tate's employment and withheld a $29,000.00 bonus. Soon after WM terminated Tate's employment, Plaintiff assisted Tate in obtaining employment with SouthWaste, Plaintiff's employer. After Tate was hired, Plaintiff became his direct supervisor and served in that capacity at the time Tate signed the declaration. Less than two weeks after Tate signed the declaration, Plaintiff gave him a favorable performance review. Three days later, Tate was given a sizeable raise. This evidence, however, does not persuade the Court to strike Tate's declaration.

### III.  **MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff seeks summary judgment that he suffered from a "disability" at the time he was selected for the reduction in force. Defendants seek summary judgment on all claims against WM because Plaintiff has failed to present evidence that the decision-maker knew of Plaintiff's heart attack at the time Plaintiff was selected for

the reduction in force. Defendants argue also that Plaintiff has failed to demonstrate that he was clearly better qualified than Jacobs, the person chosen to remain at WM in the Director of Disposal Operations position for the combined market area.[3]

### A. Applicable Legal Standard

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex*, 477 U.S. at 322-23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

---

[3] As is discussed more fully below, the Court concludes that Plaintiff has failed to present evidence that raises a genuine issue of material fact regarding Smith's knowledge of Cox's heart attack before he decided on January 12, 2009, to terminate Cox's employment. As a result, the Court denies Plaintiff's Motion for Partial Summary Judgment as moot. Similarly, the Court denies as moot Defendants' Motion for Summary Judgment to the extent it is based on Plaintiff's failure to demonstrate that he was "clearly better qualified" than Jacobs.

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit &*

*Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002). Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted). In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

The Court may make no credibility determinations or weigh any evidence. *See Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citing *Reaves Brokerage Co.*, 336 F.3d at 412-413). The Court is not required to accept the nonmovant's conclusory allegations, speculation, and unsubstantiated assertions

which are either entirely unsupported, or supported by a mere scintilla of evidence. *Id.* (citing *Reaves Brokerage*, 336 F.3d at 413).

### B. Analysis of Evidence Regarding Smith's Knowledge

The ADA prohibits discrimination against a qualified individual with a disability because of the individual's disability "in regard to . . . discharge of employees . . . and other terms, conditions, and privileges of employment." *See* 42 U.S.C. § 12112(a). Similarly, under Texas law, an employer cannot discriminate against an employee because of the employee's disability. *See* TEX. LABOR CODE § 21.051. To prevail on his claims of disability discrimination, Cox must prove that he had a disability at the time of the adverse employment action, that he was qualified for the job from which he was terminated, and that he suffered the adverse employment decision because of his disability. *Turco v. Hoechst Celanese Corp.,* 101 F.3d 1090, 1092–93 (5th Cir. 1996).[4] The Court assumes without finding that Plaintiff can present evidence to raise a genuine issue of material fact regarding the first two elements of this disability discrimination claims.

To prove that WM terminated his employment "because of his disability" Cox must demonstrate "that the employer knew of [his] substantial physical or mental

---

[4] Federal case law applying the ADA is followed in cases involving claims of disability discrimination in violation of Texas law. *See Davis v. City of Grapevine,* 188 S.W.3d 748, 757 (Tex. App. – Fort Worth 2006, pet. denied); *Thomann v. Lakes Reg'l MHMR Ctr.*, 162 S.W.3d 788, 796 (Tex. App. – Dallas 2005, no pet.).

limitation." *Taylor v. Principal Fin. Group, Inc.*, 93 F.3d 155, 163 (5th Cir. 1996); *see also Adeleke v. Dallas Area Rapid Transit*, 2012 WL 3655341, *2 (5th Cir. Aug. 27, 2012); *Dooley v. Parks and Recreation for Parish of East Baton Rouge*, 433 F. App'x 321, 326 (5th Cir. July 22, 2011). Indeed, a defendant is entitled to summary judgment absent evidence that the decision-maker knew of the employee's disability at the time the decision was made. *See Rodriguez v. Mrs. Baird's Bakery*, 111 F.3d 893, *3 (5th Cir. Mar. 25, 1997) (affirming summary judgment for the defendant where the plaintiff presented no evidence from which to infer that the decision maker was aware of his disability); *Harris v. Utica Rental Sys., Inc.*, 1996 WL 539954, *6 (E.D. La. Sept. 20, 1996). Defendant argues that Plaintiff has failed to present evidence that raises a genuine issue of material fact regarding Smith's knowledge of Plaintiff's heart attack and resulting disability.

Defendant has presented evidence that Smith decided to retain Jacobs for the new DDO position on January 12, 2009. Specifically, Smith repeatedly testified under oath in his deposition that he made the decision to terminate Cox's employment on January 12, 2009. *See* Smith Deposition, Exh. 5 to Defendants' Motion for Summary Judgment [Doc. # 31-5], pp. 35, 37, 42-43, 66, 67, 68. On January 12, 2009, Smith sent an email to WM managers Workman and Dowland, subject "So TX DDO," stating that he had thought about the subject "a good bit" and believed one option was

the best. *See* Email dated January 12, 2009, Exh. 11 to Defendants' Motion. Smith testified in his deposition that at one point there was consideration of an option to have two Directors of Disposal Operations, but he learned late on Friday, January 9, 2009, that they could not have a "junior director of operations" and that it would be difficult financially to justify that option. *See* Smith Depo. at 38. A second option, to have both DDOs report to Smith, was similarly unworkable financially. *See id.* As a result, Smith decided on January 12, 2009, that the best option was to retain only one DDO. *See id.* at 45, 79. Smith had previously determined that Jacobs "was going to be there no matter what." *See id.* at 80. Indeed, Smith's boss, Jim Trevathan, had told him previously that if Smith assumed more responsibility, then "Steve [Jacobs] is going to go with you." *Id.* Smith testified that the decision in early January 2009 was primarily whether or not to have two DDOs. *See id.* at 80-81.

Smith testified under oath in his deposition that he did not know, as of January 12, 2009 when he made his decision, that Cox had suffered a heart attack. *See id.* at 56. Plaintiff has presented no evidence to the contrary. It is undisputed that Cox did not tell Smith about his heart attack and that he has no personal knowledge that anyone else told him. Tate in his declaration states only that Smith called him on the morning of January 15, 2009, and said that he had heard about Plaintiff's heart attack.

This evidence indicates only that Smith had heard about Cox's heart attack by the morning of January 15, 2009, not by January 12, 2009.

Plaintiff argues also that Smith had to have learned about the heart attack on January 12, 2009, because others in the office knew about it. Evidence that others in the office knew about Cox's heart attack on January 12, 2009, provides mere speculation regarding Smith's knowledge on that date and does not raise a genuine issue of material fact on the issue. Moreover, the uncontroverted evidence in the record refutes Plaintiff's argument that Smith had to know because others did. Charles Rivette, the Director of Planning and Project Development, testified that he learned of Cox's heart attack on Monday, January 12, 2009. *See* Charles Rivette Deposition, Exh. 6 to Defendants' Motion for Summary Judgment, p. 13. He spoke with Cox by telephone, and Cox did not ask Rivette to advise Smith of the heart attack. *See id.* at 15. Moreover, Rivette testified under oath that he did not tell Smith. *See id.* Rivette testified that Smith "spent most of his time down at the end of the hall either behind closed doors or on the road in San Antonio." *Id.* at 16.

Dixie Gibson Meynier, a project manager working in Cox's office, testified under oath that during the early January 2009 time frame she rarely spoke with Smith. *See* Dixie Gibson Meynier Deposition, Exh. 7 to Defendants' Motion for Summary

Judgment, p. 21. She testified that she did not hear people in the office talking about Cox's heart attack unless they were speaking directly to her. *See id.* at 25.

Lucy Ortiz, WM's Human Resources Manager in the Houston area, testified under oath that she tried not to talk to Smith during the early part of January 2009 because she wanted to be "low keyed and maybe that way he wouldn't know [she] was around." *See* Lucy Ortiz Deposition, Exh. 8 to Defendants' Motion for Summary Judgment, p. 30. Ortiz stated that she first learned of Cox's heart attack when he returned to work on January 14, 2009. *See id.* at 32. She testified that before Cox returned to work, she did not hear people talking about him having a heart attack, heard no "rumors about that" and received no calls from anyone telling her about the heart attack. *See id.* at 33, 46. She testified that she never told Smith that Cox had suffered a heart attack. *See id.* at 41.

Lisa K. Doughty, the Area Community Relations Manager, in Cox's office testified under oath that she found out on Monday, January 12, 2009, about Cox's heart attack. *See* Lisa K. Doughty Deposition, Exh. 9 to Defendants' Motion for Summary Judgment, p. 20. Doughty testified unequivocally that she did not tell Smith about Cox's heart attack. *See id.* at 29, 39-40. She testified that during the week of January 12, 2009, they "didn't have access" to Smith and that his office door was always shut. *See id.* at 30.

There is no evidence in the record that anyone told Smith about Cox's heart attack before he made the decision on January 12, 2009, to have only one DDO position and to terminate Cox's employment. Absent evidence that Smith, the decision maker, had knowledge of Cox's disability at the time the relevant decision was made, Defendant is entitled to summary judgment.

## IV. <u>CONCLUSION AND ORDER</u>

Based on the foregoing, the Court declines to impose sanctions. Defendant has presented uncontroverted evidence that Smith made his decision to terminate Plaintiff's employment on January 12, 2009. Plaintiff has failed to present evidence that raises a genuine issue of material fact regarding Smith's knowledge, as of January 12, 2009, of his heart attack. Accordingly, it is hereby

**ORDERED** that Plaintiff's claims against Defendant USA Waste of Texas Landfills, Inc. are voluntarily **DISMISSED WITH PREJUDICE**. It is further

**ORDERED** that Defendants' Motion for Summary Judgment [Doc. # 31] is **GRANTED** and Plaintiff's claims are **DISMISSED WITH PREJUDICE**. It is further

**ORDERED** that Plaintiff's Motion for Partial Summary Judgment [Doc. # 32] is **DENIED AS MOOT**. It is further

**ORDERED** that Defendants' Motion for Sanctions [Doc. # 56] and Plaintiff's Motion for Sanctions [Doc. # 98] are **DENIED**.

The Court will issue a separate Final Judgment.

SIGNED at Houston, Texas, this **15th** day of **January, 2013.**

_____
Nancy F. Atlas
United States District Judge